**Maria GINTER, Vladimir Markowski, and Chris Swierdza, Plaintiffs,**

**v.**

**SWEDISH MATCH, AB, Defendant.**

**No. CV 88–3229.**

United States District Court, E.D. New York.

Jan. 24, 1991.

**546**

David J. Sutton, Garden City, N.Y., for plaintiffs.

White & Case, New York City (P.B. Konrad Knake, Of Counsel), for defendant.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Defendant moves to reargue and reconsider the court's memorandum of decision and order dated November 21, 1990 (the "Memorandum and Order"), 1990 WL 203110.[1]

In the Memorandum and Order the court denied defendant's motion to dismiss the complaint on the grounds of lack of *in personam* jurisdiction and the statute of limitations. The court found *in personam* jurisdiction pursuant to New York's Long Arm Statute, C.P.L.R. § 302(a)(1) ("transaction of business" in New York):

> [A]s a result of Match's obligations with the Polish Government to pay to bonds pursuant to its agreements with the Polish Government, Match was in essence the obligor of the bonds, and plaintiffs' claims (failure to pay the bonds) arise out of Match's "transaction of business" in New York. Plaintiffs have shown more than the designation of New York as the place of payment of the bonds. Match viewed New York as the market for the sale of the bonds; the National City Bank of New York was designated as the fiscal agents of the Obligor and publication of notice of redemption was to be inserted in New York newspapers. *See Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir.1975) ("The proper inquiry ... is 'whether looking at the totality of the defendant's activities within the forum, purposeful acts have been per-

formed in New York by the [non-domiciliary] in relation to the contract, albeit preliminary or subsequent to its execution.'") (quoting *Galgay v. Bulletin Co.*, 504 F.2d 1062, 1064 (2d Cir.1974).

Memorandum and Order at p. 13–14, 1990 WL 203110 at 10–11.

In addition, we found *in personam* jurisdiction pursuant to Section 301 of the C.P. L.R. ("doing business" in New York):

> We find that Match controlled the inner policy and structure of Holding so that it was merely a department of Match. *Taca Int'l Airlines v. Rolls–Royce of England*, 15 N.Y.2d 97, 102, 256 N.Y. S.2d 129, 132 [204 N.E.2d 329, 331] (1965). Match's contacts with New York in depositing large sums of money in Skandinaviska Enskilda Banken for Holding's use in financing Match's subsidiaries and the history of Match's participation in the issuance of the bonds by the Polish Government establishes a "continuous and systematic course of 'doing business' in New York." *Laufer v. Ostrow*, 55 N.Y.2d 305, 309–10, 449 N.Y.S.2d 456, 458 [434 N.E.2d 692, 694] (1982) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645 [419 N.E.2d 321, 323] (1981)).

Memorandum and Order at p. 17–18, 1990 WL 203110 at 13–14.

Defendant now moves to reconsider the court's decision and requests that the court amend its alternative holding that Swedish Match is "doing business" in New York pursuant to C.P.L.R. § 301 and rule that Swedish Match is not "doing business" in New York. Defendant argues that under Article 13 of the New York Business Corporation Law (the "B.C.L."), defendant cannot be held to be "doing business" in New York. Although defendant concedes that "BCL § 1301 is not a jurisdictional statute" (Defendant's Memorandum in Support at p. 3), it cites Judge Weinfeld's statement in *Grove Valve & Regulator Co. v. Iranian Oil Servs.*, 87 F.R.D. 93 (S.D.N.Y.1980), ·

---

**1.** The background and facts of the case are set out in the Memorandum and Order, familiarity   with which is assumed.

that "[t]he concept of 'doing business' is the same under both B.C.L. section 1314(b)(5) and C.P.L.R. section 301." 87 F.R.D. at 95.

Plaintiff argues that Article 13 of the B.C.L. does not apply to the question of whether a corporation is "doing business" under C.P.L.R. § 301, and that in any event, the aggregate of defendant's activities in New York supports the finding that it is "present" and "doing business" in New York. (Memorandum in Opposition at p. 10–13) (citing *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982)).

Without expressing a view as to whether Swedish Match is "doing business" in New York, we hereby vacate that portion of our Memorandum and Order finding that Swedish March is "doing business" in New York pursuant to C.P.L.R. § 301. We rest our finding of *in personam* jurisdiction solely on the ground that the claims arise out of Swedish Match's "transaction of business" in New York pursuant to C.P.L.R. § 302(a)(1).

SO ORDERED.